All right, Mr. Hyman, we'll hear from you first. Thank you, Your Honor. Thirty-three miles from Defendant L.E. Ziegenhorn's home on Trooper Ziegenhorn's day off, in a county Trooper Ziegenhorn is not responsible for patrolling. In a Walmart, Trooper Ziegenhorn saw Plaintiff Appellant Tanner carrying a thigh-holstered pistol, I guess Han Solo style, you know, down there on the lower thigh. And Trooper Ziegenhorn had no visible badge and was wearing plain clothes, walked up to Tanner, asked, Who are you with? Tanner said, I'm not with anyone. And then Ziegenhorn grabbed onto Tanner's arm and said, State Police, yelled, State Police, identify yourself. Tanner refused. Tanner told him he was going to call 911. And then called 911 and Ziegenhorn escorted Tanner outside, detained him while they waited on local PD, cornered Tanner during that detention, yelled at him, cussed at him, and said, I don't care who the F you think you are. If State Trooper asks you to identify yourself, you F-ing identify yourself. And this is admitted to as much by Trooper Ziegenhorn in his deposition. Four days later, Trooper Ziegenhorn applied for a warrant for Mr. Tanner and also started a revocation process for Mr. Tanner's concealed handgun permit. What is interesting about this is that during Mr. Tanner's criminal trial, Trooper Ziegenhorn testified that Mr. Tanner reached for his firearm. The Walmart video appears to show Mr. Tanner essentially not reaching for his firearm. His hands and some objects in his hands are up here. And that is part of the basis of Mr. Tanner's perjury claim, which is an Arkansas state tort for criminal victims. You can sue somebody you're a criminal victim of and he can say, you lied. You said I reached for my gun. And I did not. And the video shows that.  Trooper Ziegenhorn testified that his badge was visible all the way down here on his lower right leg. And the video shows that you can't really see that, at least in the initial interaction. Later you can see it in other videos. And I'm like, well, how come we can't see it in this initial interaction when you testified that your badge was visible, but later we can from these other cameras that are essentially the same quality? Just to be fair, the video is not very good. And so I guess my question is I don't think you can tell whether he is actually reaching down for the gun. I just think you can't tell. I know the district court said it appears not to be so, but I certainly couldn't tell. So does that undermine the perjury claim if we can't tell from the video? No, I don't think so because in the video, it is not a great video. It's a grainy surveillance footage. If you pay attention to the objects in his hands, that's probably the clearest part. You can see that they don't really move. But for perjury, you don't have to... So there's a statutory defense to a felony conviction for perjury. And that defense is that there is some corroborating evidence other than just me saying, you lying on this land and whatever. There has to be something. And that something can be incredibly thin. There's a case. I think it's... Gosh. The case that is on... I think it starts with an F there. It is the... The case is about a gentleman who tried to save his co-defendant. It's Fleming v. State from 1985. It's about a gentleman who tried to save his co-defendant after he pleads guilty to simple robbery or whatever it was. They tried to go after his buddy and say, hey, your buddy used a knife during that, so his conviction is going to be worse. And so this guy tried to say, no, no, no, it was me that had the knife. But when they arrested him, when they arrested Mr. Fleming initially, they found these two jackets. And one was a gray jacket, one was a brown jacket. A brown jacket had the tapes in it that the guy who didn't have the knife allegedly was stealing. And the guy in the gray jacket allegedly had a knife. And they find these two jackets. And one jacket has tapes, one jacket has knives. And this backs up the testimony from a security officer who was like, yeah, it was the guy in the gray jacket with the knife or what have you. So there can be something that is there. It's thin. And also, that's a statutory protection for a criminal conviction. And that is not a defense to the felony act of perjury when it comes to suing somebody for that sibling. Right? Because that was to protect people beyond a reasonable doubt that you have committed perjury. What about the fact that, and maybe I'm wrong about this, but I did not find the transcript of the criminal proceedings in the records, so we don't know exactly what the trooper said. Is that a problem for the perjury claim? So there's two different types of perjury. One is that you just have two inconsistent statements from a record. Right? You don't have to prove which one's false. It's just there's a record. There's another type that you could just prove based on anything that what the person said was false. Right? So Trooper Ziegenhorn himself says, this was basically my testimony. My testimony was that his hand, and this was in his deposition, his hand moved from his chest to his waist. Right? And Mr. Tanner says in his signed affidavit of what he said at the trial, Ziegenhorn claims that he actually reached for it. Right? So, and we didn't get to the part, this was on, this wasn't even a summary judgment. This was, I think, no reasonable juror could find that he committed perjury because he couldn't do it knowingly because he testified that it was. So it was, so it's below, I think it's somewhat below that. So you've got, I don't think you have to have necessarily a transcript because we've got somebody saying this is what he said, and we have him admitting that he said something very similar. What about, just one last question along this line, materiality. I think it was, what was it, obstructing governmental operations, which I understand the charge to be about him not identifying himself and not so much whether he reached down his waist or reached down. So in other words, it didn't really affect the criminal proceedings all that much because you can still obstruct governmental operations without moving your hand, I guess. Well, you can, but it was the obstruction of governmental operations was because he did not identify himself. And if you, in order, if someone's reaching for a gun, then you have the right to stop them, grab onto them, and demand that they identify themselves. You don't have that right without that? I mean, just having an open gun on you, you can't, the officer can't come up and say, hey, will you identify yourself? They can ask nicely, but they can't demand it because there's four cases, one from 1842, one from 1876, one from 1878, one from 1882. They all say you basically have a right to openly carry a pistol in Arkansas. And otherwise, you have the right to do that. Now, you can't concealed carry pocket pistols, and we can say that you can't carry these pistols into churches and government facilities and election polling places, but you have these, I can read them off to you, Your Honor, but these four cases from, well, so this is what qualified immunity is all about, is that there has to be a case on point. We have four where they said these statutes are unconstitutional under Arkansas law. So the only way he could have asked them was through the reaching for the gun. At that point, he had the right to demand, not ask, but demand. Correct. And he's in plain clothes, and his badge is not visible. And so, you know, Mr. Tanner is saying, if his badge is not visible, how do I know this is a police officer? And the trooper's kind of testimony is that they have this extended conversation. But if you watch the video, it's poor quality, but Ziegenhorn even admits that his entire version of events takes place in, like, four to six seconds. There's no way that Ziegenhorn's extended explanation of what their conversation was about happened in four to six seconds before he grabbed on to Tanner. It's just not possible. And I can go into more about the collateral estoppel. I think I beat that to death in my brief, but there are some interesting things there. The defense has pointed to, well, you know, the courts have said that prior administrative hearings can collaterally estop people in the future, potentially. And they cite an Eighth Circuit case of Brown v. Dow Chemical saying a workers' comp case collaterally stopped this guy from later suing Dow. And that's true, that's true. But this administrative hearing that Mr. Tanner had that he lost and appealed is totally different than a workers' comp hearing for a variety of different reasons. One, the judge and the prosecutor was a co-worker of the guy who attempted to arrest Mr. Tanner or did arrest Mr. Tanner and recommended that the firearm conceal handgun license be revoked, right? That's his co-worker. He sends him an email and says, I'll take care of it, Kurt. You know, we've got that in there. He, you know, he's not a neutral judge. And it was held based on the substantial evidence standard, not preponderance. And Arkansas law had just changed to where you could carry concealed without a concealed handgun license. You know, they changed it to where you don't have to have a concealed handgun license anymore. So why would Mr. Tanner fight to keep something that he no longer needed? I think the only thing that a concealed handgun license gives you is the right to buy a gun without having to go through a background check. Because you're like, hey, I just got my concealed handgun. Don't worry about it. Okay, you know, they write it down. So, and that's one of the factors in all these different cases about whether or not you can collaterally stop somebody from some prior event, right? You've got, I think there's nine different tests for collateral estoppel. And I think Tanner has eight of them that go his way, right? There's whether the defendant in the first action is sued for small or nominal damages and thus have not had a great incentive to defend vigorously. That's there. Why would Mr. Tanner spend, you know, $5,000 to appeal something when he doesn't need it anymore? And TAF v. State and Petrie v. State both explicitly say you can carry a concealed handgun without a concealed handgun license based on the law change that happened before Tanner had his concealed handgun license the first time around. So, the other thing is the judgment that relied upon as a basis for estoppel is itself inconsistent with one or more previous judgments in favor of the defendant or in favor of the person here. So that's Mr. Tanner won his criminal case. That's inconsistent with this administrative hearing appeal, right? Then we've got where the second action affords the defendant procedural opportunities unavailable in the first action that could cause a different result. Tanner did not have a right to a jury. He did not have a right to subpoena witnesses or take depositions, which you do in a workers' comp case. In the workers' comp case that the defendant relies on, they actually didn't apply collateral estoppel. They said, yeah, but we're not going to apply collateral estoppel from that workers' comp case. What about the circuit court, though? Once it went up to the circuit court, I understand it was substantial evidence. But my reading of the circuit court is that for constitutional issues like many, many administrative appeals, you go to de novo review. The factual questions are substantial evidence, but you might subject constitutional questions to de novo review. So, right, that would be true. However, the facts were different, right? Because the judge in that case relied upon Mr. Tanner as being the one who reached for his firearm. And Mr. Tanner says, I didn't reach for my firearm. Also, it's obiter dictum, because to quote the judge specifically, the judge said, any one of these three things is enough to win on this case alone. So let me see exactly what he said in the words. Tanner's weapon was not concealed. It was not covered from observation as to prevent public view. There is substantial evidence in the record to support the state police's decision to revoke Tanner's CHCL based on this violation alone. So based on one single violation. And then we go back to Alexander v. Twin City Bank, 1995. A guy sued a bank in a different county, and the circuit court said, no, it's time barred. But even if it wasn't, this guy you're trying to sue didn't commit fraud. So then the guy tries to use that same set of facts and sues a different guy involved in the fraud. And they try to say, hey, no, collateral estoppel applied. That court said that there was no fraud. And the Arkansas Supreme Court said, no, because it wasn't essential to the judgment. Because they dismissed it because it was time barred and because they found there was no fraud. It wasn't essential to the judgment that there was no fraud. Therefore, that's obitur dictum. And that's what it would be here. Because that's the first thing the judge makes his decision on. Was the gun open? Was it open carry? Yes. Boom. You don't have a concealed handgun license anymore. And the judge says as much. And so he reached it on different grounds. That could very well be true. In DWI appeals to keep your driver's license in Arkansas, they don't allow you to use Fourth Amendment arguments. If you try to raise, hey, they didn't have a right to pull me over, the Arkansas Court of Appeals said, too bad. You can't. That's not what we're here about. This is not a right. This is whatever. And having a concealed handgun license is similar to that. Because in Arkansas, you have a right to open carry. But there's no real right to concealed carry, at least not in a way that would protect him from being stopped. Do you wish to save any time for rebuttal? Well, I don't know. If you guys have any questions, might as well take care of it now. It's up to you. I just want you to know you're under a minute. You won't have any rebuttal if you go down to zero. Okay. I'll save the last 35 for rebuttal. Either way. Thank you, Your Honor. Thank you. All right. Mr. Frantz, we'll hear from you. May it please the Court, Your Honor. Vincent Frantz, Assistant Attorney General. Here today on behalf of the Chief of the Division of Warrant and the Arkansas State Police. I want to start off by clarifying a few things. The incident in question happened in late November of 2014. At the time, Arkansas did not allow for open carry. In fact, I point you to the circuit court's decision. This is on page appendix 35. It says, Using Tanner's interpretation of the statute, anyone at any time may openly carry a weapon unless their intent in doing so is to use the weapon against another person. Tanner's interpretation of the statute is senseless. The district court, in this case, was correct in determining that Mr. Tanner's Fourth Amendment claims were barred by a collateral estoppel. And specifically because it was actually litigated and it was essential to the decision. Actually litigated in Arkansas means a full and fair opportunity to litigate and that there must be a necessity. Additionally, essential to the judgment must be that there must be a requirement, a necessity, an absolute. In fact, at the administrative hearing, Mr. Tanner's own attorney argues that Trooper Ziegenhorn lacked authority under the Fourth Amendment to stop Tanner. Appendix page 60. Mr. Tanner's attorney also argued that Trooper Ziegenhorn's interaction with Mr. Tanner was not official. Appendix page 59. Both those issues of why Mr. Tanner's license was revoked for him openly carrying and for him not presenting identification when contacted by Trooper Ziegenhorn, both require analysis of the Fourth Amendment. And so they both are necessary. They both are essential to the decision. The Fourth Amendment in either one of those is not independent. It's central to both those issues that Mr. Tanner raised, which is why the district court was braved in determining that collateral estoppel was applied. Additionally, Mr. Tanner makes reference to these unfair uses of collateral estoppel. And I just briefly want to touch on those. The Arkansas Supreme Court has only recognized those when collateral estoppel is being used in an offensive manner, which is not what's being done here. An offensive collateral estoppel, when it's asserted by the plaintiff against the defendant. The courts have been concerned about collateral estoppel being used as a sword rather than a shield. So those unfair uses, no need to vigorously defend, for example, simply aren't applicable because the collateral estoppel in this case is being used as a defensive mechanism and not as an offensive. Another issue raised by Mr. Tanner was that it wasn't the same burden of proof. We simply disagree. At administrative hearing, the burden of proof is preponderance of the evidence. It would equate Mr. Tanner's Fourth Amendment to be an affirmative defense. Therefore, he would have to present that by a preponderance of the evidence, which this Court is well aware is the same standard in the 1983 case. So the fact that he claims a different burden of proof simply is not accurate. Do you mean the standard of proof before the hearing officer? Yes, Your Honor. And what's the authority for that standard of proof? Is it in the rules of the police, or is it in statute? It is not in the rules, nor is it in the statute. Arkansas Supreme Court cases have said that unless, generally speaking, the standard is preponderance of the evidence at administrative hearings. You think it's a case law speaking to administrative hearings generally? Yes, Your Honor. And, in fact, one of the cases cited by Mr. Tanner, Potlatch Court v. Word, 2009 Arkansas Appellate Court, 772, notes that at an administrative hearing the burden is a preponderance of the evidence. That was from what different agency? I assume not the Arkansas police, but... That's correct, Your Honor. You think it applies, though, to this agency hearing as well? Okay. Yes, Your Honor. And even if this court was to take a look at the statute regarding administrative procedures 25-15-212H, if you look at how that's lined out, H talks about the things that a circuit court can review. And it lists them out. The constitutional and statutory violations comes before the substantial evidence. And so it's clear that that's a different standard than the substantial evidence. And because those hearings are reviewed de novo, then it would be, again, a preponderance of the evidence standard for Mr. Tanner's requirements to make his affirmative defense at the administrative level. And then... Was Mr. Tanner legally carrying that weapon on the day he was apprehended? Your Honor, no. There had been... If we go back to the legislature in 2013, made an amendment, Pass Amendment Act 764, I believe. It is in the record. It created some confusion about whether or not Arkansas was open carry. The attorney general at the time, Dustin McDaniel, issued an opinion that said that Arkansas was not an open carry state. I see. And that opinion was shared with the state police and was used as state police training. And it was under that interpretation of law that Trooper Ziegenhorn, when he saw Mr. Tanner, he went up and asked him, are you with law enforcement? Because at the time, that was the only way someone could openly carry. And when Mr. Tanner said no, that's when Trooper Ziegenhorn believed that underneath the carrying... So Officer Tanner was acting in his capacity of enforcing the law, I guess. Yes, Your Honor, Trooper Ziegenhorn was. First, I got the impression from the other side that he was... Who was that character in Don Quixote, the Knight Errant? Was your trooper a Knight Errant, seeking to remedy the ills of society? No. No, this wasn't just some superhero, fly-by-night individual. Was he in a police uniform? No, sir. He was in plain clothes. He did have his weapon. He did have his badge when he went up. He just thought he was walking into a fellow officer, a law enforcement officer that he just didn't recognize. He was going to talk to him. When Mr. Tanner said he wasn't, that's when... Right, right. ...Trooper Ziegenhorn became concerned. Things escalated. Things went downhill, at least for Mr. Tanner. I shouldn't put it that way. No, it's an interesting case. And so... You know, I've been in the court now for September 6th, I think 32 years, and I've often asked myself, what would we do if we didn't have Arkansas in our state? And I say that was very far, a lot of farness. The state appreciates that, Your Honor. So because of that, Trooper Ziegenhorn had reasonable suspicion with that encounter. And so that's why Mr. Tanner's Fourth Amendment rights were so vital to both the open carry claim and the claim regarding failing to present his license under Rule 3.2 of the Concealed Carrier Statute, or laws. Counsel, you know, opposing counsel talks about these cases from like the 1770s, or excuse me, 1870s and 1880s. What relevance do they have, if any, that says that clearly, according to those cases, I haven't seen them, but that Arkansas is an open carry state? Your Honor, I'm not familiar with the cases he referenced. I can tell you that the law, and explicitly as Trooper Ziegenhorn understood it on November 29th, 2014, and from the guidance of the Attorney General's opinion, was that Arkansas was not an open carry state. And in fact, that had only been a confusion since the Arkansas legislator in 2013 passed the Act, which created this confusion. The confusion was because they changed the terminology for a journey. And so that's why Dustin McDaniel, Attorney General at the time, came out and said, no, Arkansas is not an open carry state. I want to briefly turn to the perjury claim. There were three elements that Mr. Tanner was required to prove for his perjury claim to even make it to the jury, or at least to present evidence sufficient to send it to the jury. First, that would be knowingly. The second element was it was false. And Justice Strauss, you hit on it about the materiality being the third. It was a false statement. There's no way to get around that. Not here to debate that. Which statement are you referring to now? That when Mr. Tanner claims that Trooper Ziegenhorn alleges that Mr. Tanner reached down for the gun, the handgun. Are you conceding that there's evidence to support the finding that that was false? Yes, Your Honor. I think there is indication in the video. But the reason Trooper Ziegenhorn had made that, and one of the things that the district court will notice. What about the other two elements then? Why isn't there sufficient evidence to infer that it was knowing? Yeah. I mean, why isn't that just a jury question as to the state of the mind of the defendant? Yeah, Your Honor. Because the testimony was that Trooper Ziegenhorn had not reviewed the video evidence. Well, I know. I know. I don't understand that very well. Why couldn't he make a false statement without having reviewed the evidence if he knew all along that he never reached down? What difference does it make whether he'd seen the video? Because that goes to his intent. He was relying upon his memory. Witnesses make mistakes. Sure. That would be a defense that it was a mistaken false statement. And the burden of proof and the burden of presenting evidence was on Mr. Tanner. But our strongest argument, Your Honor, is that it wasn't material to the obstructing government operations. Because the case law says that it has to be material to the underlying criminal case. Again, moving someone's hand down does not impact whether or not someone would be charged with or guilty of obstructing government operations. And so it wasn't material. And so there was insufficient evidence for even a reasonable jury because to even have perjury, you have to present all three elements. And so if even one of those, material or knowingly, is missing, then it shouldn't go to the jury. And the district court was correct in making that determination. Well, and that gets to my ultimate question, which is we know that obstructing governmental operations, I think, can be the statement not answering the question, right? Mr. Tanner not answering the question. Good. Can you also do it by reaching for a gun? I mean, is that a way? An officer says, hey, tell me why you're carrying who you are. Identify yourself. And instead of responding, you reach for a gun. I mean, that gets a materiality. If that's a way of committing the crime, then Judge Colleton might be right. You've got to let the jury decide this. Well, I'm not saying that's my conclusion. Right. Asking questions. Right. Go ahead and answer that if that was a question. Yeah. I'm trying to make sure. Okay. I think you definitely need more facts than just the simple moving down to the gun. I think that action alone, you know, there could be innocent purposes. I wouldn't be willing to commit that that action alone would be obstructing government operations. Really, obstructing government operations is Mr. Tanner's refusal to provide his license when asked. When the case went to trial in the criminal case, we don't have a record of that? What was the theory of the prosecution? Do we know that? At the district court level, Your Honor? In the criminal proceeding? Right. Yeah, in the criminal. So there's a district court, and that's why at state level, the district court is not a court of record, and that's why we don't have that transcript. And without that, I wouldn't be able to speak for certain. And the indictment doesn't specify how he obstructed? There's nothing in our record that I'm aware of that provides some type of theory of the case. I see I'm out of time, Your Honor, unless there's additional questions. On behalf of Trooper Ziegenhorn, Arkansas State Police, we ask that you uphold the district court's decision that collateral stop bars Mr. Tanner's Fourth Amendment and that no reasonable jury could find that Trooper Ziegenhorn committed perjury. I have one question. What does it mean to say a court is not a court of record? What do you mean by that? So there's no recordings of it. There's no transcripts made of those hearings. So what if a person wants to appeal from there? Is there a record made at that time? It's de novo to the circuit court, and that is a court of record. So there would be a whole new trial with new evidence presented? Yes, sir. I see. Okay. Thank you for your argument. Thank you. Mr. Hyman, we'll hear from you in rebuttal. Yes, Your Honor. Okay, so there's two different things at play here. One, there's these cases from the 1800s, which I understand that there's some side eye towards the 1800s. Come on, Mr. Hyman. I like the 1800s. I was just wondering. But they're there. They say, you know, no doubt in time of peace, persons might be prohibited from wearing war arms to places of public worship or elections, but to prohibit the citizen from carrying a war arm or except upon his or her own premises or a journey or traveling through whatever, whatever. And there's, like, four cases that say you could have them. And the other one is there were changes made to the 2013 statute. That's true. But they were defense-friendly changes that Trooper Ziegenhorn admitted that he knew about before he arrested Mr. Tanner, that it changed and made it a more difficult crime to prove, that the defenses became permissions. He admitted that he knew that in his deposition. And he stated, you know, he stated that he'd read that. And the Arkansas law for the state civil rights claim. I tried to stop you earlier so you'd have more rebuttal. Sorry. But your time has expired. Okay. Thank you, Your Honor. Don't misconstrue my remarks about Arkansas. One of my fondest memories of my service on this court after, well, when I retire finally is all the great lawyers you've had, appellate judges. You still believe in trying cases down there. And that's one of the fondest memories I've had as an appellate judge on this court since September of 1985, which is, heck, you guys weren't probably alive in 1985. So it's fitting we conclude this session with an Arkansas lawsuit. Thank you both for your arguments. The case is submitted and the court will file a decision in due course. All right.